*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AYS, formerly known as AYT, Minor.

FOR PUBLICATION
July 01, 2026
9:50 AM

No. 376170
Wayne Circuit Court
Family Division
LC No. 23-000222-AY

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

MARIANI, J.

In these stepparent-adoption proceedings brought under the Michigan Adoption Code, MCL 710.21 *et seq.*, petitioners sought to terminate respondent-father's parental rights to his minor child, AYS. The trial court initially entered an order granting that request and involuntarily terminating respondent-father's rights, but the court subsequently vacated that order pursuant to MCR 2.612(C)(1)(a). Petitioners now appeal by right, arguing that (1) the trial court lacked authority to vacate its prior order under MCR 2.612 because that court rule does not apply to adoption proceedings, and (2) even if MCR 2.612 did apply, the trial court reversibly erred by awarding relief under it. We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

AYS was born in December 2016 to respondent-father and petitioner-mother, who had married in July 2014. The marriage deteriorated, and petitioner-mother eventually filed for divorce. In June 2018, the Midland Circuit Court entered a default judgment of divorce, which awarded, in relevant part, sole legal and physical custody of AYS to petitioner-mother and supervised parenting time at a designated agency in Saginaw to respondent-father. The order also required respondent-father to pay child support to petitioner-mother.

Following the divorce, petitioner-mother began dating petitioner-stepfather. The two began living together with AYS in May 2019 and eventually married in May 2023. In June 2021, the Midland Circuit Court issued an order transferring the divorce and custody case to the Wayne Circuit Court and requiring respondent-father's supervised parenting time to take place at an agency in Garden City, as neither party resided in Midland County anymore and AYS was residing

in Wayne County. The Wayne Circuit Court accepted the transfer in June 2021 but, for reasons unknown, there were issues with the transfer and the case was not reassigned to a Wayne Circuit Court judge until May 2022.

While the divorce and custody case was mired in the transfer process, respondent-father repeatedly asked petitioner-mother for visits with AYS. Petitioner-mother personally supervised a visit on July 20, 2021, but respondent-father's subsequent requests did not come to fruition. In September 2021, petitioner-mother began asking respondent-father to relinquish his parental rights so that petitioner-stepfather could adopt AYS, indicating that she would not agree to respondent-father's requests to see AYS unless respondent-father did so. Respondent-father thereafter expressed to petitioners on multiple occasions that he did not wish to relinquish his parental rights for purposes of adoption because he believed that a continued relationship between him and AYS was in AYS's best interests.[1]

In June 2023, petitioners initiated the instant stepparent-adoption proceedings. In their petition for stepparent adoption, petitioners requested termination of respondent-father's parental rights so that petitioner-stepfather could adopt AYS, alleging that, for a period of at least two years leading up to the filing of their petition, respondent-father had not substantially complied with his ordered child-support obligations and had regularly and substantially failed to visit, contact, or communicate with AYS despite having the ability to do so. In September 2023, the trial court conducted a brief hearing on the petition and then, later that day, issued an order terminating respondent-father's parental rights to AYS. Petitioners were present at the hearing, but respondent-father was not.[2] In response to the court's questions, petitioner-mother confirmed at the hearing that all of the information she had presented was true and accurate, and that respondent-father had not "provided [petitioner-mother] with any support over the last two years" and had not "had any contact with [AYS] over the last few years." Petitioner-mother also confirmed that she believed the adoption would be in AYS's best interests. In December 2023, the court entered an order of adoption, declaring petitioners the parents of AYS and legally changing AYS's last name to that of petitioner-stepfather.

In July 2024, respondent-father, *in propria persona*, moved to set aside the order terminating his parental rights to AYS. He explained that he had failed to appear for the September 2023 hearing because he did not receive and had not been properly served with any notice of the hearing, and he did not even become aware of the adoption and termination proceedings until December 2023 when petitioner-mother sent him a text message that she had successfully

---

[1] The record indicates that the parties communicated about the status of the divorce and custody case during this time period as well. This included petitioner-mother informing respondent-father via text message in July 2021 that the "[c]ourt doesn't have the case yet" and "[t]here is no case yet," and in March 2022 that she "called the courthouse, they said they lost the case when transferring it" but "[h]opefully it will be fixed soon."

[2] At the hearing, the court made "a finding that adequate attempts were made to serve" respondent-father with notice of the hearing, noting that notice was sent by regular and certified mail to certain addresses believed to be associated with respondent-father but that no responses were received.

petitioned to change AYS's name.[3]  He then discovered that his parental rights had been terminated four months earlier.  Respondent-father maintained that, had he been aware of the proceedings, he would have appeared at the September 2023 hearing to contest the termination of his parental rights.  Petitioners opposed respondent-father's motion, arguing, among other things, that due efforts had been made to apprise respondent-father of the adoption and termination proceedings and that reopening those proceedings would disrupt the stability and permanence of AYS's finalized adoption.  In reply, respondent-father disputed various aspects of petitioners' response and stressed that he had complied with his child-support obligations and that the last time petitioner-mother had allowed him to see AYS was on July 20, 2021, with her repeatedly denying his requests to have contact with AYS since.  Respondent-father attached various text messages between himself and petitioner-mother in support.  Respondent-father also represented that, while the divorce and custody case was stuck in the transfer process between the Midland and Wayne Circuit Courts, the agency in Garden City assigned to handle his supervised parenting time would not honor his requests to that effect without an order from the Wayne Circuit Court, leaving petitioner-mother as his only avenue for seeking contact with AYS.

Following a motion hearing in October 2024, and pursuant to the trial court's request, the parties filed supplemental briefs on (1) whether sufficient efforts had been made to provide respondent-father with notice of the September 2023 hearing, and (2) whether there was a basis to set aside the involuntary termination of respondent-father's parental rights in light of the new information respondent-father had presented to the court regarding his efforts to have contact with AYS during the two years prior to the termination petition.  The parties first addressed the notice issue, with the trial court ultimately concluding that the efforts made in that regard had been sufficient.  The parties and court then turned to the merits of the termination decision.  Petitioners argued that revisiting the decision would undermine the Adoption Code's core purpose of promptly achieving permanence and stability for adoptees, and that the decision was well founded in light of respondent-father's failure to make meaningful efforts to exercise or enforce his right to parenting time (which petitioner-mother had done nothing to prevent) and his prior abusive and neglectful conduct toward petitioner-mother and AYS.[4]  Petitioners also argued that the trial court lacked authority to revisit the termination decision because respondent-father had not timely sought that relief under MCR 3.806, there were no grounds to overlook that untimeliness, and MCR 2.612 was inapplicable to adoption proceedings.

Respondent-father disputed petitioners' arguments and factual representations, and maintained that he had not participated in the adoption and termination proceedings sooner only because he had been unaware of them; that, despite his repeated requests from petitioner-mother,

---

[3] Respondent-father stressed that this was the first mention petitioner-mother had made to him about the adoption and termination proceedings, despite them being in communication while those proceedings had been underway—which, according to respondent-father, made it "very clear that [petitioner-mother] hid [the proceedings] from him on purpose," given "her years-long insistence that [AYS] be adopted by" petitioner-stepfather.

[4] According to petitioner-mother, "there [was] a history of domestic violence and Child Protective Services . . . involvement during the [parties'] marriage" stemming from respondent-father's behavior toward her and AYS.

she had refused to allow him to have contact with AYS; that he had no way of enforcing his right to parenting time with AYS during the 11-month period when the divorce and custody case was being transferred between courts; that petitioners had misrepresented the facts to the trial court in seeking termination of his parental rights; and that termination was not in AYS's best interests. Respondent-father asserted that, in light of these circumstances, he was entitled to relief under MCR 2.612(B) and (C) from the court's order terminating his parental rights.

In December 2024, following an additional hearing on the matter, the trial court issued a written opinion and order vacating its prior order involuntarily terminating respondent-father's parental rights. The court concluded that respondent-father could seek relief from the termination order under MCR 2.612 and that such relief was warranted because the information brought to the court's attention after it had entered that order demonstrated that "the two-year no contact requirement of MCL 710.51(6)(b) was not met." The court explained that petitioners had filed their petition for stepparent adoption on June 16, 2023, that respondent-father "had no means to enforce his rights to visitation before May 9, 2022" as a result of the transfer issues with the divorce and custody case, and that petitioner-mother had not been "agreeable to" respondent-father's requests for contact with AYS. The court concluded that its termination order "was entered by mistake given that the Court was unaware of this information" and that, "had [it] been aware of this [information] at the termination hearing, [it] would not have entered" the order.[5] Petitioners moved for reconsideration or rehearing, which the trial court denied.

This appeal followed.

## II.  DISCUSSION

On appeal, petitioners argue that the trial court reversibly erred by vacating its prior order terminating respondent-father's parental rights. Petitioners maintain, as they did below, that the court had no authority to provide relief from that order under MCR 2.612, as that court rule does not apply to adoption proceedings. According to petitioners, MCR 3.806 and MCL 710.64(1), which govern rehearings in adoption proceedings, were the only provisions under which respondent-father could obtain relief, and respondent-father did not satisfy the requirements of those provisions. And even if MCR 2.612 did apply, petitioners continue, the trial court wrongly awarded respondent-father relief under it. We disagree with petitioners' position and find no grounds in this appeal to disrupt the trial court's decision to vacate its prior termination order.

## A.  STANDARDS OF REVIEW

We review a trial court's decision to grant relief under MCR 2.612 for an abuse of discretion. *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). A trial court abuses its discretion when it renders a decision outside the range of reasonable and principled outcomes,

---

[5] After the trial court issued its order vacating the prior termination order, respondent-father filed a motion to reverse the trial court's order of adoption in light of the improper termination of his parental rights. It is not apparent from the record before us, however, that the court ever formally resolved that motion.

which necessarily occurs when it makes an error of law. *In re Gordon Guardianship*, 337 Mich App 316, 318; 975 NW2d 114 (2021). "We review for clear error the factual findings underlying a trial court's application of a court rule." *Vittiglio v Vittiglio*, 297 Mich App 391, 398; 824 NW2d 591 (2012). But we review a trial court's interpretation and application of statutes and court rules de novo. *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 3. In doing so, we look first to the statute's or court rule's plain language to determine its meaning, and we do not engage in further judicial construction if that language is clear and unambiguous. See *id*. at ___; slip op at 3; *People v Byars*, 346 Mich App 554, 567; 13 NW3d 328 (2023).

## B. APPLICABILITY OF MCR 2.612 IN ADOPTION PROCEEDINGS

We begin with, and reject, petitioners' contention that the trial court lacked authority to award relief from its prior termination order under MCR 2.612. "The Michigan Court Rules govern practice and procedure in all [Michigan] courts," and "[r]ules stated to be applicable . . . only to a specific type of proceeding apply only to that . . . type of proceeding and control over general rules." MCR 1.103. Correspondingly, the general rules of civil procedure outlined in Chapter 2 of the Michigan Court Rules "govern procedure in all civil proceedings in all [Michigan] courts . . . , except where . . . a rule applicable to . . . a specific type of proceeding provides a different procedure." MCR 2.001. Adoption and affiliated termination proceedings are special proceedings governed by the court rules on adoption set forth in subchapter 3.800. But they too are subject to the general Michigan Court Rules "[e]xcept as otherwise provided in [Chapter 3] and law[.]" MCR 3.001; see also MCR 3.800(A) ("Except as modified by the rules in this chapter, adoption proceedings are governed by Michigan Court Rules."); *In re MSL*, ___ Mich App ___, ___ n 11; ___ NW3d ___ (2024) (Docket No. 368581); slip op at 8 n 11. It is thus clear from the plain language of these court rules that the general rules of civil procedure apply to adoption proceedings unless subchapter 3.800 or the law provides otherwise.

According to petitioners, MCL 710.64(1) and MCR 3.806 bar trial courts from awarding relief under MCR 2.612 from an order or judgment in an adoption proceeding. We fail to see, however, any such prohibition in the plain language of those provisions. MCL 710.64 provides:

> (1) Upon the filing of a petition in court within 21 days after entry of any order under this chapter, and after due notice to all interested parties, the judge may grant a rehearing and may modify or set aside the order.

> (2) The court shall enter an order with respect to the original hearing or rehearing of contested matters within 21 days after the termination of the hearing or rehearing.

MCR 3.806 then sets forth the procedures that the parties and court in an adoption proceeding must follow when a party decides to seek a rehearing under MCL 710.64(1):

> (A) Filing, Notice and Response. A party may seek rehearing under MCL 710.64(1) by timely filing a petition stating the basis for rehearing. Immediately upon filing the petition, the petitioner must give all interested parties notice of its

filing in accordance with MCR 3.802. Any interested party may file a response within 7 days of the date of service of notice on the interested party.

(B) Procedure for Determining Whether to Grant a Rehearing. The court must base a decision on whether to grant a rehearing on the record, the pleading filed, or a hearing on the petition. The court may grant a rehearing only for good cause. The reasons for its decision must be in writing or stated on the record.

(C) Procedure if Rehearing Granted. If the court grants a rehearing, the court may, after notice, take new evidence on the record. It may affirm, modify, or vacate its prior decision in whole or in part. The court must state the reasons for its action in writing or on the record.

(D) Stay. Pending a ruling on the petition for rehearing, the court may stay any order, or enter another order in the best interest of the minor.

The language of these provisions does not purport to prohibit relief under MCR 2.612. The provisions establish the terms and procedures under which a party may seek, and a court may grant, relief through rehearing in an adoption proceeding. They make no reference to MCR 2.612 or any other rule of civil procedure contained in Chapter 2. Nor, by their plain language, do they provide that a rehearing is the *only* avenue for potential relief from a previously entered order in an adoption proceeding. And MCR 2.612, for its part, "does not limit the type of orders from which relief may be sought." *Adler*, 309 Mich App at 709.[6]

Citing to MCL 710.21a, petitioners argue that permitting a party to seek relief under MCR 2.612 in adoption proceedings would contravene, in petitioners' words, the "fundamental principle of the Michigan Adoption Code that adopted children are best served through the prompt and final resolution of their legal proceedings." As petitioners correctly note, the "general purposes" of the Adoption Code include "provid[ing] prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time" and "achiev[ing] permanency and stability for adoptees as quickly as possible." MCL 710.21a(c) and (d). And application of MCR 2.612 to adoption proceedings would provide a mechanism to seek relief from a judgment or order after the 21-day period for pursuing relief through rehearing under MCL 710.64(1) and MCR 3.806 has passed. That outcome, however, does not strike us as at odds with the Adoption Code's stated purposes, which are not limited to promptness but also comprise "provid[ing] procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and that will protect the rights of all parties concerned" and "support[ing] the permanency of a finalized

---

[6] We note that MCR 2.119(F) sets forth general procedures and requirements for motions for rehearing or reconsideration "[u]nless another rule provides a different procedure for reconsideration of a decision." It then cites MCR 2.612 as an example of "another rule" of that sort. In our view, MCR 3.806 would likewise fit that "another rule" bill and would, pursuant to MCR 3.001 and MCR 3.800(A), displace MCR 2.119(F) as the rule governing the pursuit of relief through rehearing in adoption proceedings. But for the reasons discussed in this opinion, we do not read MCR 3.806 to also displace the separate and distinct path to relief set forth in MCR 2.612.

adoption by allowing all interested parties to participate in proceedings regarding the adoptee." MCL 710.21a(b) and (e). Correspondingly, our Supreme Court has recognized that the Adoption Code and related court rules reflect concern both "for prompt proceedings to safeguard and promote the best interests of each adoptee in need of adoption" and "for procedural fairness to the noncustodial parent"—"dual concerns" whose "proper balancing . . . is best left for resolution to the discretion of those who have primary responsibility for application of the code, the trial judiciary." *In re Sanchez*, 422 Mich 758, 770; 375 NW2d 353 (1985) (quotation marks and citations omitted). We find that application of MCR 2.612, and the discretion it affords trial courts to provide relief from prior judgments and orders in limited circumstances, comports with the full range of the Adoption Code's stated purposes and the courts' role in their proper balancing.[7]

Petitioners also rely heavily on *In re Neagos*, 176 Mich App 406; 439 NW2d 357 (1989). In that case, a woman, four years after consenting to the adoption of her biological children, petitioned the trial court to set aside the consent adoption. *Id.* at 407-408. The court refused to do so, concluding that it did not have jurisdiction to consider the petition and that, even if it did, it lacked a sufficient basis to grant a rehearing. *Id.* at 408. This Court affirmed the trial court's ruling, concluding that the court had correctly determined that it lacked jurisdiction and that there was no equitable basis to consider the petition. *Id.* at 411-413. Over the course of its analysis, however, this Court noted that the trial court "erred in relying on MCR 2.612 . . . in reaching [its] conclusion." *Id.* at 411. This Court reasoned that, because MCL 710.64(1) was the dispositive statute "when a party wishes to set aside a consent adoption" and MCR 5.755 (MCR 3.806's predecessor) governed rehearings under MCL 710.64(1), "MCR 5.755, and not MCR 2.612, should have controlled the . . . court's decision in this case." *Id.*

We do not find petitioners' reliance on *Neagos* convincing. Because that published case was issued prior to November 1, 1990, we are not bound to follow it if we "conclude[] it is distinguishable or warrants reversal." *Plachta v Plachta*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 374260); slip op at 4-5; see also MCR 7.215(C)(2) and (J)(1). *Neagos*, on its facts, is plainly distinguishable from this case. There, the petitioner actively participated in the adoption proceedings, and she knowingly and voluntarily relinquished her parental rights when she consented to the adoption of her children. *Neagos*, 176 Mich App at 407-408, 412. Here, by contrast, respondent-father's parental rights were involuntarily terminated through proceedings in which he did not participate, and he only became aware of those proceedings months after his parental rights had been terminated. Furthermore, the *Neagos* petitioner did not seek to undo the consented-to adoption until four years had passed, *id.* at 407-408, 410, whereas here, respondent-father sought relief from the involuntary termination of his parental rights well within a year of learning of the termination—and thus in a timely fashion under MCR 2.612. See MCR 2.612(C)(2). Finally, the *Neagos* Court found no merit in the substantive basis for the petitioner's

---

[7] We also find it broadly consistent with the longstanding recognition that the statutory time period for seeking rehearing in adoption proceedings does not eliminate a court's equitable power to award relief outside of that time period. See *In re Leach*, 373 Mich 148, 150-153; 128 NW2d 475 (1964); *In re Neagos*, 179 Mich App 406, 411-412; 439 NW2d 357 (1989); *In re Kozak*, 92 Mich App 579, 581-583; 285 NW2d 378 (1979); *In re MacLoughlin*, 82 Mich App 301, 303-304, 309-311; 266 NW2d 800 (1978).

request, which was the claimed "existence of fraud in the adoption process." *Neagos*, 176 Mich App at 408, 411-412.

Given the factual circumstances presented in *Neagos*, it does not appear that the petitioner in that case had a viable claim for relief under MCR 2.612, nor did this Court's opinion in *Neagos* at all suggest that the outcome would have been different under that court rule. Accordingly, while this Court may have reached the right result in *Neagos*, there is nothing to indicate that the result turned on the applicability of MCR 2.612. And for the reasons discussed, we do not see, in the relevant court rules or statutes, any categorical bar on the applicability of MCR 2.612 to adoption proceedings; to the extent that *Neagos* is inconsistent with that conclusion, it is incorrect and we decline to follow it. See *Plachta*, ___ Mich App at ___; slip op at 4-5.[8]

## C. RELIEF UNDER MCR 2.612 IN THIS CASE

Having concluded that the trial court had authority to vacate its prior termination order under MCR 2.612, we turn next to whether the court reversibly erred by awarding that relief. Petitioners argue at length that MCR 2.612(B) did not support such relief, but it is clear from the substance of the trial court's ruling that it awarded relief on the basis of mistake under MCR 2.612(C)(1)(a). Specifically, the court concluded that it had mistakenly believed that respondent-father, despite "having the ability to visit, contact, or communicate with the child, ha[d] regularly and substantially failed or neglected to do so" for at least two years before the petition at issue was filed. MCL 710.51(6)(b). The court, however, was unaware at the time of its termination decision that respondent-father had last seen AYS on July 20, 2021, that he had made efforts to see AYS since that time through petitioner-mother, and that issues with the transfer of the parties' divorce and custody case between the Midland and Wayne Circuit Courts had impacted his ability to enforce his right to parenting time between June 2021 and May 2022.

So long as a party moves for relief under MCR 2.612(C) "within one year after the judgment, order, or proceeding was entered or taken," MCR 2.612(C)(2), that party "may be relieved from a final judgment, order, or proceeding on the basis of mistake," *Fisher v Belcher*, 269 Mich App 247, 262; 713 NW2d 6 (2005); see also MCR 2.612(C)(1)(a) (providing that, "[o]n

---

[8] We also note that petitioners have identified, and our research has uncovered, no decision from this Court or our Supreme Court that has cited *Neagos* for the proposition that MCR 2.612 is categorically inapplicable to adoption proceedings (or, for that matter, that has otherwise reached such a conclusion). Meanwhile, at least one prior panel of this Court has taken no issue with the application of that court rule to such proceedings. See *In re LADH*, unpublished per curiam opinion of the Court of Appeals, issued August 22, 2006 (Docket Nos. 266749; 366795), pp 4, 11, 13 (holding, in relevant part, that the trial court "did not clearly err or abuse its discretion by granting relief [from an adoption order] under MCR 2.612(C)(1)(a) or (f)"). This apparent dearth of jurisprudential reliance on *Neagos*'s discussion of MCR 2.612 only further supports our decision not to follow that aspect of the case. See *Plachta*, ___ Mich App at ___; slip op at 4 (noting that "[m]aintaining consistency in the law is one of the primary benefits of stare decisis, as it provides the public with some level of predictability in how the courts have interpreted the law").

motion and on just terms, the court may relieve a party . . . from a final judgment, order, or proceeding on the" basis of "[m]istake, inadvertence, surprise, or excusable neglect"). The mistake serving as a basis for relief under MCR 2.612(C)(1)(a) "may be [one] by the trial court." *Fisher*, 269 Mich App at 262. Indeed, "a trial court may, on its own initiative, correct an error arising from an oversight if the court failed to comply with a statutory requirement." *Id*. at 263.

We see no reversible error in the trial court's decision to vacate its prior termination order on the basis of mistake. For the reasons discussed above, the court was authorized to grant respondent-father's requested relief under MCR 2.612, so long as the requirements of that court rule were met. Respondent-father moved for relief from the termination order less than one year after the order was entered. See MCR 2.612(C)(2). And the court, for its part, admitted that it had based its initial termination decision on its mistaken belief that all of the statutory requirements of MCL 710.51(6)(b) had been met, which was a valid basis for relief under MCR 2.612(C)(1)(a). See *Fisher*, 269 Mich App at 262-263.

To terminate respondent-father's parental rights under MCL 710.51(6), it was petitioners' burden to prove by clear and convincing evidence that the statute's requirements were satisfied. *In re NRC*, 346 Mich App 54, 58, 60; 11 NW3d 296 (2023). Because the petition at issue was filed in June 2023, the relevant two-year time frame for purposes of MCL 710.51(6) was June 2021 to June 2023. See *id*. at 60 ("In applying MCL 710.51(6), courts are to look at the two-year period immediately preceding the filing of the termination petition.") (cleaned up). There is no dispute that respondent-father had contact with AYS at least once during that time period, in July 2021. That two-year time frame also comprised the 11-month period during which the case was stuck in the transfer process, which, at minimum, complicated and impeded respondent-father's "ability to visit, contact, or communicate with the child[.]" MCL 710.51(6)(b). And the record reflects that respondent-father had an existing parent-child relationship with AYS and made repeated efforts to maintain that relationship during the relevant time period, with petitioner-mother rebuffing his requests for visitation unless he would agree to relinquish his parental rights. See *In re Newton*, 238 Mich App 486, 493; 606 NW2d 34 (1999) (explaining that "the clear purpose of [MCL 710.51(6)] is to allow the creation of a two-parent family where one did not exist before, not to break up an existing parent-child relationship"); see also *In re Rozenboom*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371439), slip op at 3-4 (finding no clear error in the trial court's conclusion that, under the similar requirement of MCL 712A.19b(3)(f)(*ii*), the "respondent did not have the ability to visit, contact, or communicate with [the child] because [the] respondent requested contact with [the child] on numerous occasions, but [the] petitioner denied [the] respondent's requests").

It is also clear from the record that the trial court was not aware of this information at the time that it rendered its termination decision. Petitioners made no mention of it either in their petition filings or at the termination hearing. Instead, when asked at the hearing whether respondent-father had "had any contact with [AYS] over the last few years," petitioner-mother simply responded, "None." The trial court did not then inquire about or determine—as it should have under the plain language of MCL 710.51(6)(b)—whether respondent-father had the requisite ability to have such contact with AYS during the relevant timeframe, nor did petitioners offer anything on the matter beyond the conclusory representation in their petition that he did. See, e.g., *In re Hill*, 221 Mich App 683, 694; 562 NW2d 254 (1997) ("Under [MCL 710.51(6)(b)], [the] petitioner was required to prove that [the] respondent, 'having the ability to visit, contact, or

communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.' ").  And as discussed, respondent-father was unaware of the proceedings and thus did not participate in them; as a result, he was unable to provide the trial court with the information at issue himself at the time that the court rendered its termination decision.  Upon learning of that decision, respondent-father sought relief in a timely fashion under MCR 2.612, apprising the court for the first time of the information that petitioners had neglected to mention and that the court had failed to account for in granting petitioners' bid to terminate his parental rights.  See MCR 2.612(C)(1)(a) (authorizing a court, "[o]n motion and on just terms," to provide relief from a judgment or order on the basis of "[m]istake"); *Sanchez*, 422 Mich at 770 (recognizing that the Adoption Code is concerned not only with promptness, but also with procedural fairness—"dual concerns" whose "proper balancing" is entrusted to the discretion of the trial court).

Petitioners dispute the import and accuracy of this information.  Analogizing to certain decisions from this Court,[9] they maintain, as they did below, that termination was warranted because the case-transfer issues did not truly foreclose respondent-father from enforcing his right to parenting time, that his attempts to arrange visits through petitioner-mother in lieu of such enforcement were improper, and that he could and should have done more to have contact with AYS during the relevant time period.  Respondent-father disputed these characterizations of his conduct and the surrounding circumstances, and the trial court, having considered the situation and the parties' respective positions and support, concluded its prior termination order was based on a mistakenly deficient evaluation of MCL 710.51(6)'s requirements and could not be left in place.  As noted, it was petitioners' burden, in seeking termination of respondent-father's parental rights, to prove all of MCL 710.51(6)'s requirements by clear and convincing evidence.  *NRC*, 346 Mich App at 58, 60.[10]  "Clear and convincing evidence is the most demanding standard applied in civil cases and requires evidence so clear, direct, and weighty that the fact finder can come to a clear

---

[9] See, e.g., *In re SMNE*, 264 Mich App 49, 51; 689 NW2d 235 (2004) (affirming the trial court's finding that MCL 710.51(6)(b) was satisfied because, "[a]lthough [the] respondent argued that [the] petitioner-father prevented her from having regular contact with the child, she had a legal right to visit with the child under the terms of the divorce judgment" and "should have sought assistance from the Friend of the Court or the divorce court, as she had in the past"); *In re Caldwell*, 228 Mich App 116, 121-122; 576 NW2d 724 (1998) (concluding that "the probate court did not clearly err in finding that [the] respondent regularly and substantially failed to visit, contact, or communicate with the child" under MCL 710.51(6)(b) because "[e]ven if [the] respondent could not visit his son because of his incarceration, he could have complied with the statute by contacting or communicating with the child").

[10] To be clear, the satisfaction of these statutory requirements, while necessary to petitioners' bid to terminate respondent-father's parental rights, would not necessarily entitle them to that outcome.  "Even if the petitioner proves the enumerated circumstances that allow for termination, a court need not grant termination if it finds that it would not be in the best interests of the child." *In re ALZ*, 247 Mich App 264, 273; 636 Mich App 264 (2001) (cleaned up); see also *id*. at 272 (explaining that "[t]he court's authority to terminate parental rights under the statute is permissive rather than mandatory").

conviction, without hesitancy, of the truth of the precise facts in issue." *Rozenboom*, ___ Mich App at ___; slip op at 8 (cleaned up). And in the context of both MCL 710.51(6) and MCR 2.612, our review of the trial court's underlying factual findings is for clear error. See *NRC*, 346 Mich App at 58, 60; *Vittiglio*, 297 Mich App at 398. While petitioners disagree with the trial court's assessment of the information at issue, they have failed to show clear error in it. Nor have they shown reversible error in the court's ultimate conclusion that, had it been aware of this information at the time of its termination decision, it would not have found petitioners' requisite burden under MCL 710.51(6)(b) to be met—and that relief from the termination decision, given the circumstances presented, was in order.

Accordingly, we see no abuse of discretion in the trial court's conclusion that its initial termination decision was mistaken and should be vacated pursuant to MCR 2.612(C)(1)(a). See *Gordon Guardianship*, 337 Mich App at 318; *Dormio*, 309 Mich App at 709.

### III. CONCLUSION

Under a plain reading of our statutes and court rules, a trial court has the authority to grant relief to a party in an adoption proceeding under MCR 2.612. To the extent that *Neagos*, 176 Mich App 406, is inconsistent with this conclusion, we decline to follow it. In light of this conclusion and the facts presented in this case, the trial court did not reversibly err by vacating its prior order terminating respondent-father's parental rights to AYS pursuant to MCR 2.612(C)(1)(a).

Affirmed.

/s/ Philip P. Mariani
/s/ Sima G. Patel
/s/ Brock A. Swartzle